## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.  06-** |
| | : | |
| **v.** | : | **Mag. No. 06-473M** |
| | : | **VIOLATIONS:** |
| | : | **18 U.S.C. § 1347 (Health Care Fraud);** |
| **DAVID T. HACKNEY,** | : | **21 U.S.C. § 843(a)(3) and (d)(1)** |
| | : | **(Obtaining a  Controlled Substance** |
| **Defendant.** | : | **by Fraud); and** |
| | : | **18 U.S.C. §2 (Causing an Act to be Done).** |

## I N F O R M A T I O N

The United States Attorney informs the Court:

### COUNT ONE
### HEALTH CARE FRAUD

### Introduction

At all times material to this Information:

1.      The defendant, DAVID T. HACKNEY, was a licensed medical doctor in the District of Columbia, with a psychiatric practice.

2.      The Drug Enforcement Administration (DEA) was an agency of the United States which, among its other duties, regulated the dispensing of controlled substances.  DEA registered medical doctors, giving them a "DEA number."  If a medical doctor held a current "DEA registration," then the medical doctor may prescribe controlled substances.

3.      Oxycodone was a Schedule II controlled substance.  Oxycodone was a strong narcotic pain management medicine for severe, chronic pain, and came in varying strengths or combined with other medicines; for example, various "brand" names for oxycodone included: Percocet, Endocet, Roxicet, or Oxycontin (hereinafter sometimes referred collectively as "oxycodone products").

4.    Medicaid was a health care benefit program, jointly funded by the federal government and the District of Columbia, created to provide medical assistance and other benefits for certain individuals and families, typically those with low incomes and a lack of financial resources.  In the District of Columbia, the Medicaid program was administered by the Medical Assistance Administration (MAA) which was located within the District of Columbia's Department of Health. Medicaid reimbursed pharmacies which dispensed medicine to Medicaid patients if the medicine was prescribed by physicians for the benefit of the patients, ordered within the scope of the physician's practice, and was medically necessary.

5.    Medicaid was a "health care benefit program" as defined in 18 U.S.C. Section 24(b) because it was a public plan or contract, affecting commerce, under which medical benefits, items, and services were provided to individuals.

6.    Medicare was a  health care benefit program, established by the federal government which provided reimbursement for medical care to the aged and to certain disabled persons under age 65.  The Medicare program was administered by the United States Department of Health and Human Services (HHS).  Medicare Part D reimbursed pharmacies and other dispensers through prescriptions drug plans for prescription drugs which were prescribed by physicians for the benefit of the patients, ordered within the scope of the physician's practice, and which were medically necessary.

7.    Medicare was a "health care benefit program" as defined in 18 U.S.C. Section 24(b) because it was a public plan or contract, affecting commerce under which medical benefits, items, and services were provided to individuals.

8.    The defendant DAVID T. HACKNEY's registration with DEA to prescribe controlled substances expired on October 31, 2005; thereafter, the defendant HACKNEY was not allowed to write prescriptions for controlled substances, including oxycodone products.

### The Scheme

9.    Beginning in or about August 2005 and continuing until in or about May 2006, in the District of Columbia and elsewhere, the defendant DAVID T. HACKNEY, knowingly and willfully devised and executed a scheme and artifice to defraud Medicaid and Medicare, health care benefit programs, to obtain prescription drugs by causing the pharmacies to submit false claims to the health care benefit program for payments for oxycodone products which were not received by the patients, in connection with the payment for, health care benefits, items, and services:

### Purpose of the Scheme and Artifice

10.    It was a purpose of the scheme and artifice to defraud that the defendant, DAVID T. HACKNEY, would fraudulently use names and identifying information belonging to Medicaid and Medicare patients in order to obtain oxycodone products from pharmacies which then charged Medicaid or Medicare for the prescriptions.

### The Manner and Means of the Scheme

11.    It was a part of the scheme that often times, the defendant DAVID T. HACKNEY would personally arrive at a pharmacy in the District of Columbia and inquire as to the availability of a oxycodone product; typically, the defendant HACKNEY requested the higher strength tablets. The defendant would then write a prescription for a large number of tablets containing oxycodone, and would include the Medicaid or Medicare patients' personal information, such as name, date of birth, Medicaid number, Medicare (social security) number, and address, on the prescription form.

3

At times the defendant HACKNEY would wait for the prescription to be filled, pick up the prescription, sign the pharmacy's log, and would then leave the pharmacy with the oxycodone.

12.     It was a further part of the scheme that the patients whose names were used by the defendant to obtain the oxycodone prescriptions did not in fact receive the oxycodone.

13.      It was a further part of the scheme that from August 2005 to May 2006, the defendant DAVID T. HACKNEY wrote approximately 60 prescriptions for oxycodone products in various Medicaid and Medicare patients' names. Specifically, from August 2005 to May 2006, the defendant HACKNEY wrote prescriptions for over 3,800 pills at strengths varying from 5 mg (Percocet) to 40 mg (Oxycontin). In just nine days' time from November 7, 2005 to November 16, 2005, the defendant HACKNEY wrote prescriptions for over 530 pills in strengths of 5, 10, 20, 25, and 40 mg.

14.     It was a further part of the scheme that the defendant DAVID T. HACKNEY caused the pharmacy to use the names and personal information of the patients to bill Medicaid or Medicare for the oxycodone product, as the pharmacists were under the false understanding that the patients would be receiving the medication.

15.     It was a further part of the scheme that after October 31, 2005, the defendant DAVID T. HACKNEY wrote prescriptions for oxycodone, a Schedule II controlled substance, without proper and current registration with DEA. Specifically, the defendant wrote approximately 50 prescriptions for oxycodone products for over 3,500 pills from November 1, 2005 to May 2006, all the while lacking a valid, current, DEA registration number.

**(Health Care Fraud, in Violation**
**of Title 18, United States Code, Sections 1347 and 2)**

4

## COUNT TWO
## OBTAINING A CONTROLLED SUBSTANCE BY FRAUD

1.     Paragraphs 1 through 8 and 10 through 15 of Count One are realleged and incorporated as though fully set forth herein.

2.     Beginning in or about August 2005 and continuing until in or about May 2006, in the District of Columbia and elsewhere, the defendant DAVID T. HACKNEY, knowingly and intentionally acquired and obtained possession of Schedule II narcotic controlled substances by misrepresentation, fraud, deception, and subterfuge, as more fully described in Paragraphs 1 through 8 and 10 through 15 of Count One above.

**(Obtaining a Controlled Substance By Fraud, in Violation of Title 21, United States Code, Section 843(a)(3) and (d)(1))**


JEFFREY A. TAYLOR

United States Attorney
for the District of Columbia



By:    _____
VIRGINIA CHEATHAM
Assistant United States Attorney
D.C. Bar # 411980
United States Attorneys Office
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530

5